# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

November 17, 2011

Paul Robert Rizzo
DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, Esqs.
15 Mountain Boulevard
Warren, NJ 07059

    (*Attorney for Plaintiff J.G.*)

Barry A. Knopf
Cohn, Lifland, Pearlman, Herrmann & Knopf, Esqs.
Park 80 Plaza West One
Saddle Brook, NJ 07762

    (*Attorney for Defendant C.M.*)

    **RE:**   **J.G. v. C.M**
             **Civ. No. 11-2887 (WJM)**

Dear Counsel:

    This matter comes before the Court on Defendant C.M.'s Motion to Dismiss Counts One, Six, Seven, Eight and Nine of Plaintiff J.G.'s Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth in this Letter Opinion, Defendant's motion is **GRANTED**.

I.     BACKGROUND

Plaintiff J.G. is a twenty-three year old male and resident of California.  Defendant C.M. is thirty-two years old, and a resident of New Jersey.  The Court properly has jurisdiction based on the diversity of the parties.  28 U.S.C. § 1332 (2011).

The following version of events assumes Plaintiff's allegations in the Amended Complaint are true.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  C.M. and J.G. are cousins.  Beginning in 1995, when Plaintiff was seven years old and Defendant was sixteen, Defendant began sexually abusing J.G.  These repeated instances of sexual abuse continued until 1999.  All such acts occurred in Maryland.  These acts caused, and continue to cause Plaintiff psychological and emotional harm which has manifested itself as overt daily physical symptoms.  As a result, Plaintiff has been significantly and permanently injured by Defendant's acts of sexual abuse.

On May 19, 2011, Plaintiff filed a one-count Complaint alleging that Defendant violated New Jersey's Child Sexual Abuse Act ("CSAA"), N.J.S.A. § 2A:61B-1.  On July 7, 2011, Defendant filed a 12(b)(6) motion to dismiss, asserting that because Plaintiff's sexual abuse claims are governed by Maryland law, relief could not be granted to Plaintiff based on the inapplicable New Jersey statute.  On July 14, 2011, Plaintiff amended his complaint by adding eight additional counts.  Counts Two through Six allege torts arising under the laws of Maryland (the "Maryland Counts").[1]  Counts Six through Nine allege torts arising under New Jersey law.[2]  Although Defendant never amended his motion after Plaintiff added new counts, Defendant's Reply makes clear that he moves to dismiss only those counts alleging violations of New Jersey law (the "New Jersey Counts").  (Reply Mem. in Supp. of Mot. to Dismiss, ECF No. 13.)

II.    DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of the Amended Complaint, in whole or in part, if Plaintiff fails to state a claim upon which relief can be granted.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Plaintiff's Amended Complaint alleges causes of action arising under the laws of two states.  Defendant moves for dismissal of the New Jersey Counts, asserting that under choice of law principles,

---

[1]     Specifically: Tortious Assault (Count Two); Tortious Battery (Count Three); Intentional Infliction of Emotional Distress (Count Four); and Negligence (Count Five).

[2]     Namely: Assault (Count Six); Battery (Count Seven); Intentional Infliction of Emotional Distress (Count Eight); and Negligent Infliction of Emotional Distress (Count Nine).

Maryland law applies to Plaintiff's alleged sexual abuse that occurred in Maryland. If Maryland law does in fact control, dismissal of the New Jersey Counts will be proper because the Court cannot grant relief for those counts. Conversely, if the Court finds that New Jersey law controls, it must necessarily dismiss the Maryland Counts. *See In re: Philips/Magnavox Television Litigation*, 2010 WL 3522787, at *9 (D.N.J. Sept. 1, 2010) (dismissing Montana resident's New Jersey Consumer Fraud Act claim on a 12(b)(6) motion after determining Montana law governed that plaintiff's consumer fraud claim.) Presently, the Court will use choice of law analysis to decide which States' laws - Maryland or New Jersey - govern J.G.'s sexual abuse claims.

**A.     Choice of Law Analysis**

A federal court sitting in diversity jurisdiction must apply the forum state's choice of law rule. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). New Jersey uses the "most significant relationship" test of the Restatement (Second) of Conflict of Laws (the "Restatement"). *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008). New Jersey's choice of law analysis is a two-step process. First, the Court must determine whether an actual conflict in law exists. *See Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006). If no conflict exists, the inquiry is over and the Court will apply New Jersey law. *Id.* at 428. However, if there is a conflict, the Court must then determine which jurisdiction has the "most significant relationship" to the claim. *Camp Jaycee*, 197 N.J. at 136. This second step requires the Court to weigh the factors set forth in the Restatement sections corresponding to Plaintiff's cause of action. *See Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 461-62 (D.N.J. 2009); *Camp Jaycee,* 197 N.J. at 143-44.

**1.     There is an Actual Conflict Between Maryland and New Jersey Law**[3]

In New Jersey, the legislature has enacted the Child Sexual Abuse Act, which creates a specific civil action for minors who are victims of sexual abuse. Senate Judiciary Committee, Statement to Senate Bill No. 257 (Sept. 24, 1992), reprinted in N.J.S.A. § 2A:61B-1. Under the CSAA, a prevailing plaintiff is entitled to the greater of $10,000.00 or actual damages, plus attorney's fees. N.J.S.A. § 2A:61B-1(h). Maryland, on the other hand, has no statute like the CSAA, let alone one with a fee-shifting provision. *See Roe v. Doe*, 998 A.2d 383 (Md. Ct. Spec. App. 2010) (plaintiff's

---

[3] The Court recognizes that Plaintiff, a resident of Virginia, could also argue that the Court should apply Virginia law. However, because neither party argues that the applicable state law is Virginia, the Court will only determine whether Maryland or New Jersey has the "most significant relationship" to Plaintiff's claims.

3

allegations of sexual abuse as a minor properly pled as common law torts.) Because Maryland has no statute comparable to New Jersey's CSAA, an actual conflict exists between the States' laws as applied to Plaintiff's claims of sexual abuse.[4] *See Babcock v. Sears, Roebuck & Co.*, 2005 WL 3533568, at *2 (N.J. App. Div. Dec. 28, 2005) (finding conflict where New Jersey's discrimination statute allowed award of attorney's fees and punitive damages, but New York's did not). As such, the Court must proceed to the second step of New Jersey's choice of law analysis and determine which jurisdiction has the "most significant relationship" to Plaintiff's claims. *Camp Jaycee*, 197 N.J. at 136.

> **2. Under *Camp Jaycee*, Maryland has the Most Significant Relationship to Plaintiff's Claims**

The seminal case adopting the "most significant relationship" analysis is *P.V. v. Camp Jaycee*, a case with substantially similar facts to those alleged by Plaintiff. There, a mentally disabled New Jersey resident, P.V., alleged that she was sexually abused while attending a camp operated by New Jersey Camp Jaycee, Inc. ("Camp Jaycee"), a not-for-profit organization incorporated in New Jersey. Although Camp Jaycee maintained an administrative office in New Jersey, its only campsite, and the place where the abuse occurred was located in Pennsylvania.

*Camp Jaycee* addressed - in light of a clear conflict - which States' law had the most significant relationship to, and thus governed, plaintiff's claims of sexual abuse. If New Jersey law controlled, Camp Jaycee would be immune from suit under the New Jersey Charitable Immunity Act ("CIA"), N.J.S.A. 2A:53A-7 to -11. If however, Pennsylvania law controlled, no such immunity would be available because the Pennsylvania legislature specifically abrogated that immunity. *Camp Jaycee*, 197 at 144. Because this was a personal injury case, the court started its choice of law analysis with the Restatement § 146[5] presumption that the law of Pennsylvania, the state where the injury occurred, applied. The court then tested the § 146 presumption against the

---

[4] Not surprisingly, neither party even attempts to argue that Maryland and New Jersey law are not in conflict.

[5] Specifically, Restatement § 146 states: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

4

considerations set forth in Restatement §§ 145[6] and 6[7] to determine whether New Jersey's relationship to the occurrence and the parties was more significant than Pennsylvania's.

In *Camp Jaycee*, the choice of law considerations set forth in §§ 145 and 6 were not only insufficient to overcome the presumptive application of Pennsylvania law, but in fact provided additional support that Pennsylvania had a "more significant relationship" to the case than New Jersey. As to the § 145 contacts, the court explained: "Camp Jaycee chose to perform the sole charitable function for which it was organized in Pennsylvania; P.V. chose to attend a camp in Pennsylvania; the relationship between P.V. and Camp Jaycee was centered on the camp experience in Pennsylvania; the tortious conduct [] took place solely in Pennsylvania; and P.V. was injured in Pennsylvania." *Id*. at 147. The fact that the parties were co-domiciliaries of New Jersey failed to alter the court's finding that Pennsylvania's § 145 contacts with the case were greater. *Id*.

Similarly, the court found that the majority of the § 6 factors supported application of Pennsylvania law. Notably, the court reasoned: "If Pennsylvania's tort law is to have any deterrent impact and protect [similarly harmed plaintiffs], it must be applied in situations where tort-feasors repeatedly perform their tasks within the state, regardless of the home state of the campers." *Id*. at 151-52. Accordingly, the court concluded that Pennsylvania, the state where Camp Jaycee operated and where the tortious conduct and injury occurred, had at least as significant a relationship to the issues as New Jersey, and thus, the presumptive choice of Pennsylvania law was not overcome. *Id*. at 136. Therefore, the court applied Pennsylvania common law to P.V.'s claims. *Id.* at 177 (Hoens, J., dissenting).

For substantially the same reasons set forth in *Camp Jaycee*, the Court will apply Maryland law to the present matter. Here, the alleged sexual abuse occurred only in

---

[6] Restatement § 145 sets forth the following contacts to help determine which state has the most significant relationship to the occurrence and the parties:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

[7] The considerations of § 6, reduced to their essence are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee* at 463 (citations omitted).

Maryland and thus, the Court begins with the § 146 presumption that Maryland law governs. Moreover, J.G.'s suit against C.M. centers on the parties' relationship and experiences in Maryland. Accordingly, consideration of the § 145 contacts to the present case also suggest that Maryland's connections to this matter are greater than those of New Jersey. The fact that J.G. is now a New Jersey resident does not alter this determination. Nor do the § 6 factors support application of New Jersey law. As in *Camp Jaycee*, here, if Maryland's tort law is to have any deterrent impact and protect similarly harmed plaintiffs, it must be applied to this case, where defendant repeatedly performed tortious conduct within Maryland. *Id*. at 151-52. In short, consideration of Restatement §§ 145 and 6 further demonstrate that Maryland has at least as significant a relationship to Plaintiff's claims of sexual abuse as New Jersey, and thus the presumptive § 146 application of Maryland law to J.G.'s claims has not been overcome.

### III.     CONCLUSION

Given that a conflict exists between the laws of Maryland and New Jersey as they relate to Plaintiff's claims of sexual abuse, and after examining the facts of this case as they relate to the Restatement (Second) of Conflict of Laws contacts and principles, the Court concludes that Maryland, the state which is the locus of the tortious conduct and injury, has at least as significant a relationship to the issues as New Jersey, and that the presumptive choice of Maryland law has not been overcome. As such, Maryland law governs Plaintiff's claims stemming from Defendant's alleged acts of sexual abuse. Accordingly, Defendant's motion to dismiss Counts One, Six, Seven, Eight and Nine of Plaintiff's Amended Complaint is **GRANTED**.

s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**