UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **J.G.**<br><br>　　　　**Plaintiff,**<br><br>　v.<br><br>**C.M.**<br><br>　　　　**Defendant.**<br><br>**C.M.**<br><br>　　　　**Third-Party Plaintiff,**<br><br>　v.<br><br>**V.G.,  N.G., and MARY JO LYNCH,**<br><br>　　　　**Third-Party Defendants.** | Civ. No. 11-2887 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Third-Party Defendant ("TPD") Mary Jo Lynch's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2).[1] Defendant/Third-Party Plaintiff C.M. ("Christopher M.")[2] opposes the motion.  For the reasons set forth below, TPD Lynch's motion is **DENIED**.

---

[1] Although TPD expressly moves for dismissal under Rule 12(b)(2), which governs dismissal for lack of personal jurisdiction, she has confusingly characterized her motion as one for "summary judgment dismissal." (Notice of Mot., ECF No. 50.)  The Court wishes to make clear that this is a Rule 12(b)(2) motion to dismiss, as motions for summary judgment are governed by Rule 56.

1

# I.  FACTUAL AND PROCEDURAL BACKGROUND[3]

On May 19, 2011, Plaintiff J.G. ("Jason G.") initiated this action against Defendant/Third-Party Plaintiff Christopher M. (hereinafter, alternatively referred to as "TPP").  As explained in the Court's November 17, 2011 Letter Opinion:

> [Jason G.] is a twenty-three year old male and resident of California. [Christopher M.] is thirty-two years old, and a resident of New Jersey. . . .
>
> . . . .
>
> [Jason G. alleges that] Beginning in 1995, when [Jason G.] was seven years old and [Christopher M.] was sixteen, [Christopher M.] began sexually abusing [Jason G.]  These repeated instances of sexual abuse continued until 1999.

(Nov. 17, 2011 Letter Op.  2, ECF No. 17.)   TPP Christopher M. denies that he sexually abused Jason G.

### **Christopher M.'s Third-Party Complaint**

Third Party-Plaintiff Christopher M. alleges that beginning sometime around December 15, 2009, Third-Party Defendants V.G. ("Virginia G."), N.G. ("Nora G."), and Mary Jo Lynch[4] "began making a series of false and defamatory

---

[2] Based on the abundance of parties with two letter abbreviations in this action, and for the sake of readability, the Court has substituted those two-letter abbreviations with proper first names which reflect the gender of the party being referenced.  The Court emphasizes that this is being done solely for the ease of the reader, and that these names have been arbitrarily chosen.

[3] As this is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the Court will view the facts and consider the documentary submissions in the light most favorable to TPP.  *See One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F.Supp. 317, 322 (D.N.J. 1997); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992).

[4] At this juncture, the Court finds it useful to explain the relationship of these parties.  As noted earlier, Jason G. and Christopher M. are cousins.  TPD Nora G. is Jason G.'s sister, and therefore, is also Christopher M.'s cousin.  TPD Virginia G. is the mother of Jason G. and Nora's G., and therefore, is also Christopher M.'s aunt.  TPD Mary Jo Lynch is a friend of Virginia G.

statements toward and about" his alleged sexual abuse of Jason G. (Third-Party Compl. ¶ 9, ECF No. 37.)  More precisely – and relevant to the present motion – TPP alleges that the TPDs called him on several occasions and made abusive remarks.  (*Id*. at ¶¶ 13, 16.)  TPP further claims that the TPDs also called a number of third-parties, including TPP's employer, and falsely told those third-parties that TPP sexually abused Jason G.  (*Id*.)  TPP asserts that as a result of the TPDs' knowingly false and defamatory allegations, he has incurred damage to his reputation, was fired from his position as Chief of Staff for a New Jersey senator, and has suffered physical and emotional harm .  (*Id*. at ¶¶ 18, 48, 52.)

Based on these allegations, on July 5, 2012, TPP filed a Third-Party Complaint in which he asserts the following tort claims against all three TPDs: (1) Defamation/Libel; (2) Civil Conspiracy; (3) Intentional Infliction of Emotional Distress; (4) Negligent Infliction of Emotional Distress; and (5) Tortious Interference with Prospective Economic Advantage.

In response, TPD Lynch filed the present Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  In support of that motion, TPD Lynch notes the following: she is a Virginia resident; she has never been a New Jersey resident; she does not work in New Jersey; she does not own any property or maintain bank accounts in New Jersey; she does not pay taxes to New Jersey; and "her only involvement with this case was to place three cell phone telephone calls to [TPP]

3

from Virginia.  In each call I only advised [TPP] to have no further contact with [Jason G.] and [Nora G.]"  (Cert. of Mary Jo Lynch, ECF No. 50-5.)  Based on these facts, TPD asserts that the Court lacks personal jurisdiction over her.

## II. DISCUSSION[5]

### A. Personal Jurisdiction Generally

As an initial matter, the Court notes the following:  First, that once a defendant raises a Rule 12(b)(2) personal jurisdiction defense, the plaintiff bears the burden of coming forward with a set of facts sufficient to create a *prima facie* case of jurisdiction.  *See, e.g., Mellon Bank PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  And further, that because such a defense "requires resolution of factual issues outside the pleadings," a plaintiff's jurisdictional allegations must be supported with appropriate affidavits or documents.  *Time Share Vacation Club v. Atlantic Resorts, Ltd*, 735 F.2d 61, 67 n. 9 (3d Cir. 1984).

Second, that a federal district court is permitted to exercise "personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."  *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir.1987) (citing Fed.R.Civ.P. 4(e)).  Thus, to determine if personal jurisdiction is permitted over an out-of-state defendant, a federal court first looks to the forum state's long-arm statute, which in New Jersey,

---

[5] The Court notes that although the legal standard set forth in the Discussion section of the Opinion refers to "plaintiffs" and "defendants," the standard is equally applicable to third-party plaintiffs and third-party defendants.

permits the exercise of personal jurisdiction to the fullest limits of due process under the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).

And <u>third</u>, that to resolve the present motion, ultimately, this Court must determine whether the exercise of *in personam* jurisdiction over TPD Lynch comports with the Due Process Clause of the Fourteenth Amendment in light of Plaintiff's jurisdictional allegations. *Id.*

In that regard, the Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). Under this standard, a party may be subject to the *in personam* jurisdiction of a court through what is known as specific jurisdiction,[6] meaning that a plaintiff's claim is related to or arises out of the defendant's specific contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984).

---

[6] The Court notes that a party may also be subject to the *in personam jurisdiction* of a court through what is known as general jurisdiction. *See J. Mcintyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2789 (2011). However, in this case, TPP asserts that this Court may exercise *in personam* jurisdiction over TPD Lynch on the basis of specific jurisdiction only. (TPP's Memo. of Law in Opp. to TPD Lynch's Mot. to Dismiss 1., ECF No. 80.) The Court's analysis is appropriately limited as such.

In this case, TPP asserts that this Court should exercise personal jurisdiction over TPD Lynch in this matter because TPP's claims against her arise out of TPD Lynch's specific contacts with New Jersey. However, in order for the Court to exercise said jurisdiction, it must first be satisfied that its exercise of *in personam* jurisdiction over TPD Lynch on the basis of these specific contacts is consistent with the parameters of the Due Process Clause and is not otherwise unreasonable, as set forth in a two-part test (the "Due Process Test"): First, TPP must demonstrate that TPD Lynch has constitutionally sufficient "minimum contacts" with New Jersey. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Second, the Court must determine, in its discretion, that to exercise jurisdiction over TPD Lynch would otherwise comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### B. Minimum Contacts

Under the Due Process Test, the Court must initially determine whether TPD Lynch has sufficient minimum contacts with New Jersey. The minimum contacts analysis, in turn, is essentially a two-part test: (1) the litigation must "arise out of or relate to" at least one of defendant's contacts with the forum, *see D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 2009 WL 1332304, at *5 (3d Cir. Mar.5, 2009); and (2) the defendant must have "purposefully directed [its] activities" at the forum

state, such that the defendant could reasonably anticipate being involved in a litigation in that forum.  *See Burger King*, 471 U.S. at 472.

This is a fact-sensitive inquiry that turns on the "quality and nature of [the] defendant's activity [in relation to the forum state.]" *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 203 (3d Cir.1998) (citation omitted).  *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (in assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation.").  In that regard, telephone communications made by a defendant into the forum state may contribute to a finding of minimum contacts.  *See Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d, 476, 482 (3d Cir. 1993); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147-48 (3d Cir. 1992).

Moreover, in tort cases, such as this one, jurisdiction may be conferred over non-residents based upon a single deliberate contact with New Jersey, where that contact resulted in the alleged injury.  *United States Golf Ass'n v. United States Amateur Golf Ass'n*, 690 F.Supp. 317, 320 (D.N.J.1988) (citations omitted).  And in the case of intentional torts, the minimum contacts requirement may be satisfied under the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783, 790 (1984). *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998) (citing *Keeton*, 465 U.S. at 780) ("under *Calder* an intentional tort directed at the plaintiff

7

and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied."). Under the "effects test," the minimum contacts prong of the Due Process Test will be satisfied if: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant aimed his tortious conduct at the forum, meaning "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO*, 155 F.3d at 265-66.

### i. Application

Bearing the foregoing principles in mind, the Court turns to the issue of the whether TPD Lynch's actions are sufficient to satisfy the minimum contacts prong of the Due Process Test. In this case, TPP asserts that in a series of phone calls to TPP, TPDs Virginia G., Nora. G. and Lynch made abusive comments about TPP which they knew to be untrue and which caused TPP to suffer physical and emotional harm. And because a number of these calls were made directly to TPP, these calls were undisputedly targeted at a New Jersey resident. Here, and although she denies further involvement, TPD Lynch admits that she is responsible for personally initiating three of those phone calls to TPP. Moreover, TPP alleges that the TPDs series of phone calls were, at the very least, a contributing cause, to

tangible harms which he suffered in New Jersey.  As such, the Court is satisfied that TPD Lynch's allegedly tortious conduct was expressly aimed at New Jersey.

Accordingly, the Court finds that TPP has met his burden of demonstrating facts which show that the Court should exercise personal jurisdiction over TPD Lynch based on her specific minimum contacts with New Jersey.  *See Moore v. St. Paul Companies, Inc.*, CIV. A. 94-1329, 1995 WL 11187 (D.N.J. Jan. 3, 1995) (noting first, that a defendant whose utterance injures someone in another state may foresee being sued there and second, that a defendant whose fraudulent communication by mail and telephone harms a New Jersey plaintiff is subject to personal jurisdiction in New Jersey, and finding that the exercise of personal jurisdiction was proper where, assuming the truth of plaintiff's allegations, it was foreseeable to defendant that the harm from the misrepresentation he made in Minnesota would accrue in New Jersey, the state in which Plaintiff relied on it).

### C. Traditional Notions of Fair Play and Substantial Justice

Having determined that TPP has demonstrated that TPD Lynch has constitutionally sufficient minimum contacts with New Jersey, the Court must now consider whether the exercise of personal jurisdiction over TPD Lynch is otherwise reasonable, meaning that it does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *see also Burger King*, 471 U.S. at 477.  At this stage, the burden shifts to TPD Lynch to present "a compelling case

that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Mellon Bank*, 960 F.2d at 1223.  To determine reasonableness, the Court considers the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies.  *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  Only in "rare cases [do the] minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 116 (1987) (citing *Burger King*, 471 U.S. at 462).

In this case, the TPD Lynch fails to present any argument – much less a compelling one – showing why the exercise of jurisdiction over her would be unreasonable.  Moreover, the Court finds that in light of the common factual nexus surrounding TPP's claims against TPD Lynch and the claims and defenses asserted by the numerous other parties involved in this matter, including TPDs Virginia M. and Nora M., requiring TPD Lynch to defend this action is New Jersey promotes the judicial system's interest in obtaining the most efficient resolution of these

controversies. As such, requiring TPD Lynch to defend this action in New Jersey does not offend traditional notions of fair play and justice. *See Negron v. Oxford Airport Technical Services*, Civ. No. 09-330, 2009 WL 1249288, at *6 (E.D. Pa. May 6, 2009) ("In the absence of any argument from [defendant] that the exercise of personal jurisdiction is unreasonable, the court finds it fair and just because[, among other reasons,] . . . it would be inefficient for the court, burdensome to plaintiffs and possibly unfair to the other defendants for plaintiffs to file separate actions in Pennsylvania and Minnesota for claims arising from the same accident.").

## III. CONCLUSION

For the reasons stated above, TPD Lynch's Rule 12(b)(2) motion to dismiss is **DENIED**.  An appropriate order follows.

　　　　　　　　　　　　　　　　　　　／s/William J. Martini
　　　　　　　　　　　　　　　　　　**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 26, 2013.**