## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **J.G.,** | No. 11-2887 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **C.M.,** | |
| **Defendant.** | |
| **C.M.,** | |
| **Third-Party Plaintiff,** | |
| **v.** | |
| **V.G., N.G., and Jane Doe,** | |
| **Third-Party Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendant C.M. brings this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the motion is **DENIED**.

## I.      BACKGROUND

### A. Allegations of Abuse

Plaintiff J.G. was born on January 28, 1988.  (C.M.'s Undisputed Statement of Facts ("C.M.'s SOF") at ¶ 1)  J.G. alleges that his older cousin, C.M., sexually

abused him when J.G. was between the ages seven and eleven.  (*Id.*)  C.M. was born on November 23, 1979.  (C.M.'s SOF at ¶ 4)  For three summers, beginning the summer after J.G. finished first grade, J.G.'s mother sent J.G. to make overnight visits to the Maryland home of J.G.'s aunt, who is the mother of C.M.  (Deposition of J.G. at 71:17-72:2; 89:7-13, 91:12-19, 94:17-20)  During these summers, J.G. and C.M. engaged in contact that J.G. alleges was sexually abusive.  (*See* C.M.'s SOF at ¶¶ 11-20; Complaint at ¶¶ 5-19)  The alleged sexual abuse occurred while J.G. and C.M. wrestled or "spooned" or when C.M. gave J.G. "wedgies."  (*See* Deposition of J.G. at 107:23-112:15, 121:18-19, 139:21-140:13)

At his deposition, J.G. described one particular incident in the second or third summer that stuck out in his mind.  C.M. would place J.G. in a "choke lock" between C.M.'s legs, forcing J.G. to suck or bite C.M.'s thigh and groin area in order to be released.  (Deposition of J.G. at 139:23-25, 141:1-17, Declaration of Andrew Macklin, Esq., ("Macklin Decl.") Exhibit D)  J.G. also recalled that on at least one occasion, C.M. placed his finger inside J.G.'s anus.  (Deposition of J.G. at 144:24-145:10)  J.G. also recalled that C.M. had an erection once while wrestling with J.G.  (Deposition of J.G. at 145:22-146:4)

J.G. admitted that, at first, he did not think of the contact as inappropriate.  However, he elaborated, "There was a point where the – I guess the physical contact between us got to a point that I didn't really like it and I'm not sure if that exact point was the second summer or the third summer, but it was during one of those two times at his house where things happened that I started not to like it, not to have fun with it."  (Deposition of J.G. at 133:18-24)  J.G. noted, for example that C.M. would squeeze J.G.'s head or chest between his legs to the point where it was hard for J.G. to breathe.  (Deposition of J.G. at 134:10-12, 135:11-12)  J.G. recalled times when C.M. asked J.G. to touch C.M.'s penis.  (Deposition of J.G. at 147:1-2)  When asked if C.M. masturbated in front of J.G., J.G. responded, "He touched himself sometimes."  (Deposition of J.G. at 146:24-25)

At his deposition, J.G. admitted that he engaged in similar kinds of horseplay with his friends, which he did not consider abusive.  He stated that he felt the horseplay with C.M. was sexual abuse because C.M. was bigger, made J.G. feel submissive, and J.G. lacked control over himself in his encounters with C.M.  (Deposition of J.G. at 275:5-276:25)

Beginning around 4th grade, J.G. began to experience "bad feelings" such as anxiety and fear of adult men.  (Deposition of J.G. at 178:11-179:17)  Plaintiff experienced gastrointestinal symptoms, difficulty breathing, and crying from these

feelings. (Deposition of J.G. at 179:10-24, 183:4-9) The feelings could be triggered for no apparent reason, but seeing something violent, or a sex abuse movie would make these feelings very hard to control. (Deposition of J.G. at 179:19-24) In the 7th grade, he attempted to commit suicide because he wanted to escape the feelings. (Deposition of J.G. at 187:24-188:23)

J.G. attended Yale University. (C.M.'s SOF at ¶ 26) He joined a secret society called Berzelius. (*Ibid.*) While Berzelius was gathered in a "tomb," another member gave his biography, which included a description of sexual abuse he suffered as a minor. (*Id.* at ¶ 27) J.G. was viscerally affected by the story of his classmate's rape. (C.M.'s SOF at ¶ 28) That night, C.M. started thinking about the wrestling and inappropriate touching with C.M. (Deposition of J.G. at 274:17-4) Plaintiff reported to his expert, Dr. Mendell, that he called his mother that night. According to Dr. Mendell's notes, J.G. told his mother about the rape of his classmate. (Dr. Mendell's notes of J.G., pg. 1, Macklin Decl., Exhibit J) J.G. reported that his mother asked him, "Did it happen to you?" (*Ibid.*) J.G. reported that he told his mother, "yes" and that it was C.M. (*Ibid.*)

### B. Procedural History

On May 19, 2011, J.G. filed the original one-count Complaint alleging sexual abuse in violation of N.J.S.A. 2A:61B-1. On July 7, 2011, C.M. filed a motion to dismiss on the grounds that New Jersey's conflict of law principles directed the court to apply Maryland law, not New Jersey law, to this case. While C.M.'s motion to dismiss was still pending, Plaintiff filed an Amended Complaint on July 14, 2011. The Amended Complaint added causes of action for assault, battery, intentional infliction of emotional distress, and negligence torts under both New Jersey and Maryland law. The court agreed with the argument in C.M.'s pending motion that New Jersey's conflict of law principles directed the court to apply Maryland law. The court therefore dismissed all the New Jersey causes of action in J.G.'s Amended Complaint, leaving J.G. with only his Maryland causes of action.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340

(3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III.  DISCUSSION

### A. Statute of Limitations

The core issue is whether J.G. has brought forth sufficient evidence from which a reasonable jury could conclude that C.M. committed "sexual abuse" under Maryland law.  If the Plaintiff has failed to present evidence from which a rational jury could conclude that "sexual abuse" had occurred, the statute of limitations bars J.G.'s claims.  The court finds that J.G. has presented evidence of sexual abuse.

Maryland law provides a general three-year statute of limitations from accrual of a cause of action unless otherwise specified.  Md. Code Ann., Cts. & Jud. Proc. § 5-101.  The general three year statute applies to J.G.'s claims for battery, intentional infliction of emotional distress, and negligence.  *See Ford v. Douglas*, 799 A.2d 488, 450-51 (Md. Ct. Spec. App. 2002) (battery), *Knickman v. Prince George's County*, 187 F. Supp.2d 559, 563-64 (D.Md. 2002) (intentional infliction of emotional distress), *Poole v. Coakley & Williams Const., Inc.*, 31 A.3d 212, 234-39 (Md. 2011) (negligence).  Maryland has a one-year statute of limitations for assault.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-105.

Maryland's general rule is that the statutory period begins to run upon the occurrence of the alleged wrong, unless a specific legislative or judicial exception applies.  *See Jenkins v. Karlton*, 620 A.2d 894, 896 (Md. 1993).  In 2003, the Maryland legislature enacted a new rule expressly extending the statutory period to 7 years in cases of sexual abuse a victim suffers as a minor.  *Doe v. Roe*, 20 A.3d 787, 788 (Md. 2011).  The rule states, "An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within 7 years of the date that the victim attained the age of majority."  Md. Code Ann., Cts. & Jud. Proc. § 5-117(b).  J.G. attained the age of majority on January 28, 2006.  He filed this Complaint in 2011.  Therefore, if he was a victim of sexual abuse, he has filed timely; if not, the statute of limitations bars the Complaint.

Section 5-117(a) provides that the definition of "sexual abuse" extending the statute of limitations to seven years is the definition found in § 5-701 of Maryland's Family Law Article.  Section 5-701 defines "sexual abuse" as any "act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member."  Md. Code Ann., Fam. Law § 5-701(x)(1).  Section 5-701 goes on to specify that "sexual abuse" includes "sexual offense in any degree."  Md. Code Ann., Fam. Law § 5-701(x)(2).

Under Maryland law, a third degree sexual offense includes "sexual contact" with a person under the age of 14 where the person performing the sexual contact is at least 4 years older than the victim.  Md. Code. Ann, Crim. Law § 3-307.  "Sexual contact," as used in § 3-307, means "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party."  Md. Code Ann., Crim. Law § 3-301.

In this case, there is evidence that sexual abuse meeting the definition of Section 5-701, or in the form of a third degree sexual offense occurred.  The alleged abuse all took place before J.G. was 14, and C.M. was more than four years older than J.G.  There is ample evidence of sexual contact.  For example, J.G. remembered an incident where C.M. put his finger in J.G.'s anus.  He recalled C.M. making him bite C.M.'s groin.  J.G. recalled C.M. asking J.G. to touch C.M.'s penis.  J.G. recalled being the victim of "wedgies."

There is evidence that some of the sexual contact that occurred was for the purposes of sexual exploitation, gratification, or abuse.  J.G. describes the sexual contact as exploitative due to C.M.'s power over J.G.  The sexual contact was accompanied by acts that a rational jury could conclude were abusive, like choking J.G.  The proximity of the sexual contact with non-sexual but abusive contact could lead a rational jury to believe that the underlying purpose of the sexual contact was exploitative.  There was also evidence that C.M. was sexually gratified by the contact.  J.G. once saw C.M. develop an erection during one of the suspect wrestling matches, and J.G. claims C.M. touched himself, possibly to masturbate, in front of J.G.

The Maryland law excludes from "sexual contact" an act that is a "common expression of familiar or friendly affection."  Md. Code Ann., Crim. Law § 3-301.  C.M. characterizes his contact with J.G. as such friendly and familiar expressions of affection.  C.M. argues that J.G. admitted to engaging in similar types of wrestling and "spooning" with his friends and that J.G. did not find this behavior sexually

5

abusive.   The arguments are not convincing.   C.M.'s acts at issue are ones a reasonable jury could conclude were not expressions of affection in and of themselves.  These include giving J.G. wedgies, physically coercing J.G. to bite C.M. around the groin, placing a finger in J.G.'s anus, and asking J.G. to touch C.M.'s penis.  Moreover, the fact that these suspicious acts were performed by an older, bigger, and trusted family member against a younger victim, could lead a rational jury to conclude that C.M.'s acts crossed the line from expressions of familiar affection to sexual abuse.

Because there is sufficient evidence of "sexual abuse," the seven year statute of limitations applies, and J.G.'s Complaint was timely filed.

### B. Sufficiency of Memory as Evidence

The direct evidence of abuse comes entirely from J.G.'s memory.   C.M. argues that J.G.'s memories of the sexual abuse are not sufficient as evidence from which a rational jury could find liability.  C.M. relies on an argument that J.G. has made certain statements from which a rational jury could conclude that he has no actual memory of egregious sexual abuse.  These include statements that appear in the notes of his treating psychologists and experts.   The statements express uncertainty as to whether he might have been raped, uncertainty about the circumstances under which he was digitally penetrated, and the fuzziness of certain memories.  (*See* C.M.'s Reply Brief at 1-3)

The blurry edges of J.G.'s memory do not warrant summary judgment.  The deposition testimony contains ample evidence from which a rational jury could conclude that J.G. remembers instances of sexual abuse besides rape and digital penetration.  These include being coerced to bite C.M.'s groin, being asked to touch C.M.'s penis, and being the victim of wedgies.

## IV.      CONCLUSION

Plaintiff has timely filed his Complaint and has produced sufficient evidence from which a reasonable jury could find in his favor.  For these reasons, C.M.'s motion for summary judgment is denied.

/s/ William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 23, 2014**